

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 5, 2023**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| WILLIAM BRYAN BARTON, | § | Case No.: 22-20196-rlj7 |
| | § | |
| Debtor. | § | |
| | § | |
| KENT DAVID RIES, Trustee in Bankruptcy of William Bryan Barton, | § § § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 23-02002 |
| BARTON 5 FAMILY, L.P., | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION

On June 9, 2023, the chapter 7 trustee, Kent Ries (Trustee), filed a Notice of Removal thereby removing this lawsuit then-pending in the Potter County, Texas Court at Law, styled *Amarillo National Bank v. William Bryan Barton and Barton 5 Family, L.P.*, to this Court. In response, Barton and Barton 5 bring three motions: a motion to remand or abstain, a motion to

1

dismiss the action, and a misguided motion for contempt and sanctions. For the reasons stated below, the Court denies all relief requested by Barton and Barton 5.

I.

The removed action is a suit filed by Amarillo National Bank against William Bryan Barton (Barton), the chapter 7 debtor in the underlying bankruptcy case, and Barton 5 Family, L.P. (Barton 5) to recover Barton's interest in Swing Hard Ventures, LLC that was allegedly fraudulently transferred by Barton to Barton 5. The bank had obtained judgments against Barton in August and September of 2020 in an aggregate amount of over $8 million.[1] Amarillo National Bank's suit on the transfer was filed in Potter County on December 11, 2020. The transfer allegedly occurred in early February 2018. The bank's action to set aside the transfer and recover the interest (or its value) is brought under the Texas Uniform Fraudulent Transfer Act, commonly referred to as "TUFTA."

II.

Barton filed his chapter 7 bankruptcy case on October 24, 2022. His filing created a bankruptcy estate consisting of all his legal or equitable interests in property. 11 U.S.C. § 541(a)(1).[2] Ries, as Trustee, removed the action as representative of Barton's bankruptcy estate and thus then standing in Barton's shoes as defendant in the action.

Since the removal, Ries, again as Trustee, formally intervened *as plaintiff* in the action and, under § 544(b) of the Bankruptcy Code, assumed the position of Amarillo National Bank, the plaintiff in the state court action. Ries now stands as plaintiff on the TUFTA claim.[3] In

---

[1] The judgment entered on August 18, 2020 was in the amount of $814,268.26, and the judgment entered on September 8, 2020 was $7,374,090.92. Case No. 22-20196, Claim No. 5-1. As of the petition date, the balances on the judgments were $1,080,715.10 and $6,812,930.67, respectively, for a total claim of $7,893,645.77. *Id*.

[2] Hereinafter, "section" or "§" refers to 11 U.S.C., the Bankruptcy Code, unless otherwise stated.

[3] This case creates the curious circumstance of a bankruptcy trustee removing a state court suit for the debtor as a defendant for the purpose of prosecuting the same action for the plaintiff as a creditor of the debtor. Outside of bankruptcy, a creditor brings a fraudulent transfer action to recover property or its value. Such recovery benefits *that*

2

addition, in July 2023, Ries filed Plaintiff's Second Amended Complaint that dropped Barton as a defendant.

III.

By their motions, Barton and Barton 5 raise a raft of issues. They contend that Ries, Trustee, is not a party in the action and thus has no standing; that as an action removed by a non-party, it cannot be within the Court's jurisdiction; that the action is barred by the statute of limitations (or the state-law-based statute of repose); and that removal was improper because a trustee can only stand in the shoes of a hypothetical unsecured creditor (and thus not a *real* creditor as Amarillo National Bank is here). As a result of these alleged deficiencies, Barton and Barton 5 say the Court must dismiss the action for lack of jurisdiction. If not that, then it should remand the action (or abstain from hearing it) back to state court.

Barton makes a more nuanced argument as well. Barton says that given his receipt of a discharge in his bankruptcy case, Ries, as Trustee standing in the role of Amarillo National Bank as plaintiff, cannot prosecute a TUFTA fraudulent transfer action on a discharged debt, the debt that was held by Amarillo National Bank. Barton's bankruptcy discharge was issued March 7, 2023. Barton says that the continued pursuit of this action violates the discharge injunction, constitutes contempt, and warrants an award of damages, including punitive damages, and attorneys' fees. This is despite the conference of such action to the Trustee under § 544(b) of the Bankruptcy Code.

IV.

The Court rejects Barton and Barton 5's arguments.

---

creditor. In a chapter 7 bankruptcy case, only the chapter 7 trustee can bring an action to recover property the debtor fraudulently transferred. Any recovery, however, benefits the bankruptcy estate and thus *all* creditors. This serves the bankruptcy policy of providing a fair and equitable distribution to all similarly situated creditors. Section 544 is one of the avoidance powers granted to bankruptcy trustees.

3

First, Ries, as the chapter 7 Trustee, removed the action as a party defendant. The chapter 7 Trustee is the representative of the bankruptcy estate that was created upon Barton's chapter 7 filing and, as such, has the capacity to sue and be sued. § 323(a), (b) and § 541(a). *See* Fed. R. Bankr. P. 6009; *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 795 (D.C. Cir. 2010) ("The commencement of Chapter 7 bankruptcy extinguishes a debtor's legal rights and interests in any pending litigation, and transfers those rights to the trustee, acting on behalf of the bankruptcy estate.").

Ries perhaps created confusion by stating in his Notice of Removal that the removed action is based on TUFTA but "may only be pursued by the Trustee under … § 548" of the Bankruptcy Code, the Code's version of a cause of action for a fraudulent transfer. ECF No. 1.[4] From the date of the alleged transfer, February 1, 2018, to the date of Barton's chapter 7 filing is well outside the two-year limitations period for the chapter 7 trustee to bring an action under § 548. *See* 11 U.S.C. § 548(a)(1). Trustee's counsel, at argument, said the reference to § 548 was a mistake. Regardless, both from the Notice of Removal and the briefing in support of each party's arguments, it is clear that the Trustee seeks avoidance of the alleged transfer under § 544(b)(1) of the Code, which provision allows the Trustee to avoid a transfer by the debtor that is voidable "under applicable law by a creditor holding an unsecured claim" against the debtor. 11 U.S.C. § 544(b)(1).

Second, as an action to recover an alleged fraudulent transfer, the removed cause is a "core" matter over which the Court holds jurisdiction to hear and decide the action. *See* 28 U.S.C. § 157(b)(2)(H) and 11 U.S.C. § 544(b)(1).

Third, by invoking § 544(b)(1), the Trustee succeeds to the rights of Amarillo National

---

[4] "ECF No." refers to the numbered docket entry in the Court's electronic case file for Adversary No. 23-02002.

4

Bank. *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 260 (5th Cir. 2010) ("If an actual, unsecured creditor can, on the date of the bankruptcy, reach property that the debtor has transferred to a third party, the trustee may use § 544(b) to step into the shoes of that creditor…."). The transfer was allegedly made on February 1, 2018; the bank filed its TUFTA cause on December 11, 2020, well within the four-year limitation period under TUFTA. Tex. Bus. & Com. Code § 24.010.

Fourth, the statute does not require that the creditor be "hypothetical." "The burden is on the trustee … to demonstrate the existence of an actual creditor with an allowable claim against the debtor." 5 COLLIER ON BANKRUPTCY ¶ 544.06 (16th 2023).

Fifth, as Barton 5 points out, TUFTA's avoidance provisions apply to *creditors* who hold a *claim*, and a *claim* is defined as "a right to payment…."[5] Tex. Bus. & Com. Code §§ 24.005, 24.006, and 24.002(4) & (3). Barton 5, looking to § 524(a)(2) of the Bankruptcy Code, then says that because Barton received a discharge of the underlying creditor's debt,[6] no claim (or right to payment) exists to support the Trustee's continuation of the TUFTA action. But this reasoning fails to account for the definition of a claim—"right to payment"—under TUFTA and the effect of a discharge in bankruptcy. Under § 524 of the Bankruptcy Code, the debtor's discharge prevents recovery against the debtor of any discharged debt as a "personal liability of the debtor." § 524(a)(2). Further, the Code "ensures that a discharge will be completely effective and will operate as an injunction against the commencement or continuation of an action or the employment of process to collect or recover a debt *as a personal liability* of the debtor." 4

---

[5] The entire definition of "claim" specifies that a claim is "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Tex. Bus. & Com. Code § 24.002(3).

[6] The underlying case, *In re William Bryan Barton*, is a chapter 7 case, and Barton received his discharge under § 727. Case No. 22-20196.

5

COLLIER ON BANKRUPTCY ¶ 524.02 (16th 2023) (emphasis added); *see* 11 U.S.C. § 524(a). The discharge is focused on the debtor's personal liability on a *debt*, which the Code defines as a "liability on a claim." 11 U.S.C. § 101(12). And, like TUFTA, the Code defines a claim as a "right to payment…." 11 U.S.C. § 101(5)(A). These provisions, read together, draw the distinction between a discharge *of the debtor's personal liability* and the *creditor's right to payment*. The discharge relieves the debtor's obligation to pay and the creditor's ability to enforce the debt as opposed to the *creditor's right to payment* on its claim. This is not a novel point. Courts consistently acknowledge that a discharge does not extinguish a debt.[7] The bottom line is that "while the creditor may not *enforce* her claim as it existed pre[discharge], the claim nevertheless continues to *exist*." *Rountree v. Nunnery (In re Rountree)*, 448 B.R. 389, 411 (Bankr. E.D. Va. 2011) (alterations in original) (quoting *United States v. Conston, Inc. (In re Conston, Inc.)*, 181 B.R. 769, 773 (D. Del. 1995)).

Limiting the creditors' claims to a "right to payment" underscores other, broader policy-based concepts imposed in bankruptcy. The Code does not prevent a debtor from voluntarily repaying any debt. 11 U.S.C. § 524(f). The discharge does not affect the liability of nondebtors for such debt. 11 U.S.C. § 524(e). And of immediate concern are chapter 7 cases like here: where the trustee, standing in the shoes of a creditor, attempts to avoid a transfer as fraudulent when the debtor was discharged of his debt to that creditor. Barton was granted his discharge less than five months after his case was filed. Expecting the Trustee to object to the discharge (as Barton 5's position requires) would lead to unfortunate consequences including unnecessary,

---

[7] *See Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."); *In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1351 (5th Cir. 1989) ("A discharge in bankruptcy will simply not affect the liability of a guarantor."); *Rountree v. Nunnery (In re Rountree)*, 448 B.R. 389, 410–12 (Bankr. E.D. Va. 2011) (citing cases standing for the proposition that discharge does not extinguish a debt).

6

premature, and frivolous objections to discharge and avoidance actions. It's unclear on what grounds a trustee could, in good-faith, object to a debtor's discharge if it is for the sole purpose of later pursuing a fraudulent transfer action. *See* § 727 (listing the circumstances for which a discharge will not be granted, and the circumstances where a debtor's discharge may be revoked). Last, Barton 5's construction is also wholly inconsistent with the Code's stated limitations periods for the trustee's chapter 5 avoiding powers (§§ 544, 545, 547, 548) under which, in the vast majority of chapter 7 cases, run well beyond when the debtor receives his discharge. *See* 11 U.S.C. § 546.[8]

V.

The bankruptcy discharge does not eliminate creditors' claims in cases where discharge occurs before the chapter 7 trustee's final distribution. Individual debtors surrender their non-exempt assets in return for the relief provided by the discharge. Distributions to creditors are typically made after the discharge is granted. A creditor's right to payment survives the discharge.

The Court will issue its order denying all relief requested by Barton and Barton 5's motions.

### End of Memorandum Opinion ###

---

[8] Section 546 requires careful reading—"may not be commenced after the earlier of ... the later of"—but reveals the limitations period typically runs one-plus to two years after the case filing.